CONOVER *vs.* HOBART.

1. A mortgage, free from usury in the hands of the mortgagee, is not rendered usurious by the payment of a premium to his assignee, to induce him to purchase it.

2. But even if the mortgage were usurious, a purchaser of the mortgaged premises, who has taken a conveyance from the mortgagor, expressly subject thereto, cannot set up usury as a defence to a suit on the mortgage.

3. The purchaser of a mere equity of redemption, in premises covered by a usurious mortgage, who buys subject to the lien of such mortgage, cannot set up usury as a defence to the encumbrance.

---

On pleadings and proofs.

*Mr. Griggs,* for complainant.

*Mr. J. S. Applegate,* for defendant.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage given by Jonathan S. Holmes and wife, to Daniel I. Schenck (now deceased), dated April 5th, 1871, on certain land in Monmouth county,

to secure the payment of $1000, in one year, with lawful interest.

The mortgage, and the bond it secures, were assigned by Schenck to the complainant, by deed of assignment, of even date with the mortgage. The mortgaged premises were, at the date of the mortgage, conveyed to Jonathan S. Holmes, in fee simple, by Daniel I. Schenck. January 25th, 1872, Jonathan S. Holmes conveyed them, in fee simple, to Ellen E. Holmes, wife of Lozell Holmes, expressly subject to the payment of the complainant's mortgage thereon; and February 24th, 1872, Lozell Holmes and his wife, by deed of that date, conveyed them to the defendant, Garret A. Hobart, in fee simple, expressly subject to that mortgage. The defence is usury.

There are but two witnesses sworn in the cause—the complainant, in his own behalf; and Lozell Holmes, for the defendant.

The complainant's account of the transaction is, that he purchased the mortgage from Schenck, and gave him, in person, $1000 for it, on the day the assignment was delivered to him; that he negotiated with Schenck directly, for the mortgage, and had nothing to do with anybody else; that the matter was brought to his attention by Lozell Holmes, who told him that Schenck had a mortgage to sell, and asked him if he would buy it; that he said he would, and then went to see Schenck on the subject, and told him he would want $175 for giving the cash for the mortgage. He says Schenck agreed to pay that sum, and that he, the complainant, gave him a check for $1000, and Schenck gave him an assignment of the bond and mortgage, and a note of Lozell Holmes and his wife, for $175, endorsed by Schenck. He produces the check, which is his own, is dated April 6th, 1871, and is for $1000, drawn on the First National Bank of Red Bank, payable to Schenck's order, and by him endorsed.

There appears to be no doubt that Schenck received the whole of the amount of this check. Nor does there seem to

be any room for doubt that Schenck was interested, and took part in the whole of the transaction.

Lozell Holmes' version of the affair is, that he, in behalf of his father, Jonathan S. Holmes, applied to the complainant for a loan of $1000, which the complainant agreed to make, for a premium of $175, which he agreed to give, and did give, by his wife's note, endorsed by him and his father, and Schenck, which was paid. He insists that the whole transaction was conducted between him and the complainant, and that Schenck was not a party to it, except for the purpose of receiving the money.

The complainant swears, on cross-examination, that he had a conversation with Schenck (he thinks it was at Freehold) before he (the complainant) got the mortgage, a few days before Schenck came down to Red Bank and got the money on it; that Schenck told him he had, or was going to have, such a mortgage, and wanted him to buy it; that complainant told him what he would do it for—$175—and Schenck agreed to sell it to him for that price; that Schenck did not say anything, at that time, about complainant's taking the $175 note, or about Holmes paying the $175, or anything about the Holmes, except in reference to the property the mortgage was on; that Schenck never said anything to him about the Holmes fixing the $175; that he took the note to accommodate Schenck; that Schenck had the note himself; that he did not know what the Holmes gave the note to Schenck for; that Schenck first suggested giving him the note; that complainant wanted to take the $175 out of the $1000, and Schenck said he wanted to use all the money, and proposed to give him the note, and afterwards complainant agreed to take it; that Schenck did not tell him the mortgage was given to close up a sale of the premises, but told him it was a first mortgage; that the papers were all executed when Schenck brought them to him, and that they were exchanged on the same day he gave Schenck the check, which was April 6th, 1871.

The complainant's version of the transaction receives strong

corroboration, from the fact that the note was endorsed by Schenck. Why should he have incurred liability in a transaction in which, as Lozell Holmes insists, he took no part, and had no interest? The evidence leads me to the conclusion that the mortgage was undoubtedly given to Schenck, to secure the payment of $1000 of the purchase money of the conveyance of the mortgaged premises to Jonathan S. Holmes; that it was a valid instrument, free from usury, in the hands of the former, and that it was sold by Schenck to the complainant. The fact, if it were so, that Lozell Holmes induced the complainant to purchase it, and agreed to pay, and did pay, complainant a premium for so doing, would not render the mortgage usurious. *Donnington* v. *Meeker*, 3 *Stockt.* 362.

The defence of usury is not sustained. But the defendant in this case is not in a position to avail himself of the defence, if it were supported by the evidence. He took his conveyance, expressly subject to the complainant's mortgage. The amount of it was allowed to him as so much of the purchase money paid by him to Lozell Holmes and his wife for the property. He ought not, in equity, to be allowed to set up this defence of usury, which they have waived, or to have the benefit of a deduction, by reason of such defence, from the amount of the mortgage which his grantors, in reckoning the consideration money of the conveyance with him, have provided him with the money to pay in full. Under such circumstances, he manifestly ought not to be permitted to avail himself of a statute not intended for his benefit.

Defendant's counsel insists, that less strictness in allegation and proof, is required under the law against usury, as it now stands, than was required under the law, as it stood when its penalty was more severe.

Although the rigor of the law against usury has been relaxed, and the penalty mitigated, the rules which regulate and control its application are still in full force. The reason of them still continues.

The purchaser of a mere equity of redemption, in premises

covered by a usurious mortgage, who buys subject to the lien of such mortgage, cannot set up usury as a defence to the encumbrance. *Brolasky* v. *Miller*, 1 *Stockt.* 814.; *Dolman* v. *Cook*, 1 *McCarter* 63.

The complainant is entitled to a decree for the full amount due upon his mortgage, according to its terms.